PETER TALILI, et al., Plaintiffs

v.

SATELE MOMOSEA, et al., Defendants

High Court of American Samoa
Land & Titles Division

LT. NO. 18-86

July 14, 1986

Before REES, Chief Justice, Presiding, TAUANU'U, Chief Associate Judge and OLO, Associate Judge.

Counsel: For the Plaintiffs, Charles Ala'ilima
For the Defendants, William Reardon

This case is another installment in a long standing dispute between branches of the Satele family. See, e.g., Satele v. Faga, 2 A.S.R. 26 (1938; Satele Moseqi v. Momosea, L.T. 1544-1975; Momosea v. Talili, L.T. 029-77; Talili v. Foma'i L.T. 72-79; and Momosea Satele v. Talili, L.T. 1984.

On May 29, 1986, the plaintiffs in the instant case requested a temporary restraining order and preliminary and permanent injunctions against defendants, claiming that defendants had that morning caused a bulldozer to destroy standing crops belonging to plaintiffs, including a number of mature breadfruit and coconut trees whose destruction amounted to irreparable harm; that the plaintiffs had no advance warning of these actions; and that without the requested orders the

destruction could be expected to continue. The court issued a temporary restraining order and an order to show cause why a preliminary injunction should not issue. On June 3 the Court held a hearing on the order to show cause, and the parties asked for a continuance until June 24. On June 24 the defendants appeared and argued that the preliminary injunction should not issue for several reasons:

1) Defendant Satele is the sa'o of the Satele family, with authority to dispose of family land. He assented to the bulldozing in order to provide a house for his sister.

2) A previous order of this court in a dispute between the same two factions of the Satele family had recognized that once a Satele was chosen he would have the authority to resolve land disputes within the family. This incident was therefore no more than the inevitable outcome of that long standing dispute.

3) Although a sa'o ordinarily must consult with the family before ordering major disruptions in settled patterns of family land use, prior decisions of this court have recognized that this land (Tomea or To'omea) is for the benefit of the Pili branch of the Satele family. Satele v. Faga, 2 A.S.R. 26 (1938); and Satele Mosegi v. Momosea, L.T. 1544-1975. Since the plaintiffs are not members of the Pili branch of the family, Satele had no obligation to consult with them before disposing of the land.

4) In any case, plaintiffs have been occupying more and more family land, without consultation with the sa'o and in violation of the 1984 court order.

5) Finally, even if plaintiffs would otherwise be entitled to a preliminary injunction, they are no longer entitled to one with reference to the land that has already been cleared. The "irreparable harm," if any, has already occurred with the destruction of the trees. If defendants build a house on the cleared land and are found to have done so wrongfully, they can be ordered to take down the house. Therefore the building of a house will not amount to irreparable harm, and an injunction would be improper.

The first four of these issues are best resolved after a trial at which both parties have a

37

chance to muster all their evidence and all their arguments. Whether a sa'o has a duty to consult with family members who are occupying a certain piece of land, but who are not members of the branch of the family to whom the benefit of the land has been dedicated by a prior court decision, involves several difficult questions of law and custom. Since it is quite possible that either side could prevail in litigation over such questions, we would ordinarily enjoin all parties from taking any actions to change the status quo with regard to the land pending the outcome of the litigation.

The defendants' fifth assertion, however, raises an interesting and troubling question. To deny the injunction would be to hold that parties can avoid injunctions that would otherwise issue against them simply by doing all the irreparable harm they plan to do with no advance warning to those who will be injured. Such a holding would be disturbing if only because of the incentive effect it might have on parties to future land disputes. Yet A.S.C.A. § 43.1301(j)(2) clearly requires that "great or irreparable injury will result to the applicant before a full and final trial can be fairly held" as a prerequisite to a preliminary injunction. The obvious import of the words is that the injury must be such as can be avoided by the injunction.

Part of the answer to this dilemma is found in the particular nature of the right being asserted by plaintiffs. It is quite possible that the Court could ultimately find that Satele does have the right to dispose of family land in whatever way he believes to be in the best interest of the family, but only after thorough consultation with all affected members of the family. In this case whether a house had been built in the meantime on the disputed land could have a profound and lasting effect on the plaintiffs, since it is presumably more likely that family discussions would result in forbearance to build a house on the land than in agreement to tear down a house already built. Insofar as it would dramatically alter their chances for achieving the outcome they desire in such family discussions as might take place after the trial, the further development of the land would therefore cause great and irreparable injury to the plaintiffs.

In apparent recognition of the unusual nature of the interests often being asserted in Samoan

land disputes, the Fono has provided that in such disputes a Justice of the High Court may make such "preliminary orders as to him seem just to restrain any Samoans from ... exercising any right or doing any act, matter, or thing concerning or affecting any Samoan land" pending the outcome of the litigation, without requiring that any specific irreparable harm be shown. A.S.C.A § 43.0303.

We therefore grant the preliminary injunction as requested. All parties are enjoined from doing any act on or affecting the land To'omea, except that all parties may continue to cultivate and otherwise use areas already being cultivated and used by them prior to the onset of this litigation. No new kinds of cultivation or other use, and in particular no further development of the cleared land, are permitted pending the final outcome of this litigation.